**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

SUSAN DANIEL,

                Plaintiff,

v.                                   CIVIL ACTION NO.  5:17-cv-03986

RALEIGH GENERAL HOSPTIAL, LLC,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Defendant's Motion for Summary Judgment* (Document 43) and *Memorandum of Law in Support* (Document 44), the *Plaintiff Susan Daniel's Response in Opposition to Defendant's Motion for Summary Judgment* (Document 48), and the Defendant's *Reply in Support* (Document 50), as well as the *Complaint* (Document 1-1) and all attached exhibits.   For the reasons stated herein, the Court finds that the motion for summary should be granted.

**FACTS**

The Plaintiff, Susan Daniel, initiated this action on August 14, 2017, by filing her complaint in the Circuit Court of Raleigh County, West Virginia.   She named Raleigh General Hospital, LLC (Raleigh General) as the sole Defendant.   Citing diversity jurisdiction based on the out-of-state citizenship of the sole member of the Raleigh General, LLC, the Defendants removed the action to this Court on September 14, 2017.

Ms. Daniel was originally hired by Raleigh General as a pediatric floor nurse in March of 1997. Upon her hiring, Ms. Daniel attended an orientation where she was informed of the policies, procedures, and Code of Conduct regarding employees at the hospital, including the method by which employees could be disciplined. (Susan Daniel Dep., at 36:18-23, 100:22-101:3.) Included in the employee code of conduct was the requirement that employees "conduct [themselves] in a manner which enhances the care, services, and image of the company." (*Id.* at 41:20-24.) As affirmed by Ms. Daniel, this included ensuring "courteous interactions with coworkers, patients, and visitors," and "quiet and orderly conduct." (*Id.* at 42:7-11.)

Ms. Daniel earned praise and various accolades during her tenure as a nurse at Raleigh General, and considers many of her coworkers and supervisors as "lifelong friends." (*Id.* at 101:14-22.) Slightly over two years into the job, however, she ran into her first of several disciplinary issues regarding these terms of the code of conduct. On October 13, 1999, Ms. Daniel's department director Margaret Weinberg took a disciplinary action against her by issuing verbal counseling regarding her customer service and communication skills. (*Id.* at 106:4-14.) According to the document reflecting the verbal counseling, Ms. Weinberg noted that Ms. Daniel's "[c]ustomer service skills are not meeting standards as set by the [hospital]," and that there were "[r]epeated concerns . . . about interactions with staff and families," including inappropriate language. (*Id.*)

Other similar disciplinary actions followed during the duration of Ms. Daniel's employment at the hospital. In January of 2000, Ms. Daniel was suspended without pay for two days based on an incident wherein Ms. Daniel took a patient with RSV virus through the hallway and to the nurses' station. (*Id.* at 115:14-24.) The report that accompanied the incident, read

and signed by the Plaintiff, cited "on-going issues with her professional behavior," and that several employees voiced concerns regarding the Plaintiff's "unprofessional conduct while on duty." (*Id.* at 109:14-19; 116: 13-21.)  In April of 2002, Ms. Daniel was again verbally counseled by a superior because a physician complained that she responded rudely to him.  (*Id.* at 124:12-126:10.)  In July of 2004, a different superior issued a disciplinary action to the Plaintiff stemming from a patient complaint.  The patient's family complained that, upon arriving to the Plaintiff's floor from the emergency room, the Plaintiff "was very rude to the ER staff" and the patient's family.  (*Id.* at 132:22-137:1.)  Ms. Daniel testified that she was disciplined for her unprofessional conduct and that she was on notice that future actions regarding rudeness or poor customer service could result in suspension or termination.  (*Id.* at 136:22-137:6.)

In December of 2006, Ms. Daniel was issued a verbal warning by a department director for inappropriately criticizing another co-worker in front of a physician.  (*Id.* at 142:18-144:19.) According to the report issued in response to that verbal warning, the Plaintiff had been reprimanded a month prior "and told not to discuss or criticize employees."  (*Id.* at 144:15-145:6.) In May of 2007, Ms. Daniel was again reprimanded for giving another employee a "wet willy," wherein she got her finger wet and touched the ear of her co-worker.  (*Id.* at 151:12-17.)  Ms. Daniel admitted that she was trying to be a "fun nurse" and lighten the mood because her co-worker "looked like they were grumpy and didn't want to be at work."  (*Id.* at 150:22-151:1.) Ms. Daniel's acting department director Tammy Spurgeon issued a verbal warning in January of 2008 after Ms. Daniels argued with a West Virginia Department of Health and Human Resources employee over whether a patient should be placed into foster care, and again a few months later after a patient accused Ms. Daniel of having a "very unprofessional attitude" and being "rude and

nasty." (*Id.* at 162:4-164.) Ms. Spurgeon also issued Ms. Daniel a written warning in April of 2008 based on a physician's complaint that Ms. Daniel was argumentative. That physician commented that Ms. Daniel has "excellent clinical skills but felt very upset by the way [Ms. Daniel] spoke to her." (Document 43-2, at 97.) In her own testimony, Ms. Spurgeon admitted to being "very good friends" with Ms. Daniel, but that she had communication issues and "could cause havoc." (Spurgeon Depo. at 14:24, 33:16-24.)

Ms. Daniel was issued a similar verbal warning in 2010, and in 2014 she was ultimately suspended without pay for three days because of the way she handled a conversation with teenagers who volunteered at the hospital. During that incident, Ms. Daniel's supervisor explained that she "[sat] a poor example" for the teenagers and other staff by an inappropriate interaction in which she "demonstrated unprofessional communication" when raising her voice while having a conversation with the junior volunteer. (Document 43-3, at 44.) Her supervisor specifically noted in the written report of the incident that Ms. Daniel has a recorded history of unprofessional conduct with other staff, "especially in stressful times," and that she "appears to continue to have difficulty dealing with stressful situations and the varied pressures that can occur in a busy nursing department." (*Id.*) Ms. Daniel agreed with her supervisor's assessment, and testified that it was fair. (Susan Daniel Dep., at 254:12-255:6.) Ms. Daniel was required to apologize to the junior volunteers with a member of the hospital's human resources staff present, but the supervisor who was present during the apology concluded that the apology "was not consistent with the hospital's standards of performance and service recovery." (Document 43-3, at 44.) Her supervisor stated that Ms. Daniel "never admitted to being inappropriate in her previous remarks to the volunteers .

. . . and never accepted responsibility for her actions in connection with this incident." (*Id.*) Based on this evaluation, Ms. Daniel was suspended for three days without pay. (*Id.*)

After other similar warnings regarding professionalism and her conduct regarding patients and staff, Ms. Daniel received her final disciplinary action. In August of 2015, a new Director of Children's and Women's Services, Ms. Tamara Abel, responded to a "loud verbal argument between [a] patient's mother and [Ms. Daniel]" in a patient room. (Document 43-3, at 55.) After a discussion with the patient's mother, Ms. Abel determined that Ms. Daniel was arguing loudly with the patient's mother regarding her response time to a call light. (*Id.*) In the written discipline record, Ms. Abel noted that Ms. Daniel had previously been counseled for similar inappropriate behavior on January 30, 2015, July 18, 2014, July 2, 2014, and March 5, 2010. (*Id.*) Later, Ms. Abel reported the incident to the hospital's human resources director, Chris Beebe. Mr. Beebe and Ms. Abel reviewed Ms. Daniel's disciplinary history and determined that they would recommend terminating Ms. Daniel based on her history of unprofessional behavior. (Tamara Abel Depo. at 107.) That same day, Ms. Abel and Mr. Beebe discussed the incident with Ms. Daniel and terminated her employment at the hospital.

Ms. Daniel initiated this action in response to her termination. She contends that, while her record does contain a history of disciplinary actions based on her conduct with patients and other hospital staff, she also has a history of filing complaints to hospital administration regarding patient care and safety. According to Ms. Daniel, many of the disciplinary actions that the hospital took against her stemmed from her making reports regarding concerns for patient safety. Ms. Daniel specifically alleges that the incident regarding junior volunteers stemmed from such a report, for example, and that while she "may have asked if [the junior volunteers] were the ones

that had provided the patients with drinks," and "possibly told [one of the junior volunteers] that they weren't to be passing drinks for several reasons," she asserts that her actions were taken out of a concern for patient safety. (See, Daniel Depo., at 86:1-87:2.) Ms. Daniel alleges that the history of discipline stems from her "attempts to ensure compliance with policies that were designed to ensure patient safety." (Compl., at ¶ 3.) She also claims that these retaliatory disciplinary actions against her created an environment of stress that forced her to take a month of medical leave. (*Id.* at ¶ 4.) In Counts I and II of her complaint, the Plaintiff alleges causes of action for age discrimination and disability discrimination based on the West Virginia Human Rights Act (WVHRA). In Count III, she alleges a claim of retaliation in violation of the West Virginia Patient Safety Act (WVPSA). In Count IV, the Plaintiff alleges a wrongful discharge claim in contravention of West Virginia public policy, and in Count V she alleges a hostile work environment claim.

## STANDARD OF REVIEW

The well-established standard in consideration of a motion for summary judgment is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)–(c); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 169 (4th Cir. 2014). A "material fact" is a fact that could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). A "genuine issue" concerning a material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict

in the nonmoving party's favor.  *FDIC v. Cashion*, 720 F.3d 169, 180 (4th Cir. 2013); *News & Observer*, 597 F.3d at 576.

The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322–23.  When determining whether summary judgment is appropriate, a court must view all of the factual evidence, and any reasonable inferences to be drawn therefrom, in the light most favorable to the nonmoving party.  *Hoschar*, 739 F.3d at 169.  However, the non-moving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor."  *Anderson*, 477 U.S. at 256.  "At the summary judgment stage, the non-moving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action."  *Perry v. Kappos*, No.11-1476, 2012 WL 2130908, at *3 (4th Cir. June 13, 2012) (unpublished decision) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).

In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter," *Anderson*, 477 U.S. at 249, nor will it make determinations of credibility. *N. Am. Precast, Inc. v. Gen. Cas. Co. of Wis.*, 2008 WL 906334, *3 (S.D. W. Va. Mar. 31, 2008) (Copenhaver, J.) (citing *Sosebee v. Murphy,* 797 F.2d 179, 182 (4th Cir. 1986).  If disputes over a material fact exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate.  *Anderson*, 477 U.S. at 250.  If, however, the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment should be

granted because "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23.

## DISCUSSION

The Defendant moves for summary judgment on all of the Plaintiff's claims. Because the claims in Counts I and II both allege discrimination violations under the WVHRA, the Court will address those claims together, and then address each of the remaining counts. At the outset, however, the Court notes that the Defendant is correct regarding the two-year statute of limitations for adverse employment actions. According to the West Virginia Supreme Court of Appeals, "[t]he statute of limitations for employment discrimination cases brought to enforce rights under the West Virginia Human Rights Act . . . begins to run from the date a plaintiff first learns of the adverse employment decision." *State ex rel. Raven Crest Contracting, LLC v. Thompson*, 807 S.E.2d 256, 260 (W.Va. 2017). Because the Plaintiff filed her complaint on August 14, 2017, any claims based upon alleged adverse employment actions that occurred before August 14, 2015, are barred.

### A. Disability and Age Discrimination

The Defendant first seeks summary judgment on both of the Plaintiff's discrimination claims alleged pursuant to the WVHRA. The WVHRA prohibits employers from discriminating based on, among other things, age and disability. W.Va. Code § 5-11-9(1). "The term 'discriminate' or 'discrimination' means to exclude from, or fail or refuse to extend to, a person equal opportunities because of . . . age [or] . . . disability." W.Va. Code, 5-11-3(h). Pursuant to the West Virginia Supreme Court of Appeals, employment discrimination claims under the WVHRA are governed by the same analytical framework as cases brought pursuant to Title VII

of the Civil Rights Act of 1964, as set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-04 (1973). *See, Barefoot v. Sundale Nursing Home,* 457 S.E.2d 152, 159 (W.Va.1995); *Hanlon v. Chambers*, 464 S.E.2d 741, 754 (W.Va. 1995).

Under this framework, "[t]here are two avenues by which a plaintiff may defeat summary judgment." *Constellium Rolled Prod. Ravenswood, LLC v. Rogers*, No. 2:15-CV-13438, 2017 WL 1552325, at *5 (S.D.W. Va. Apr. 28, 2017) (Johnston, J.) (citing *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005)). The first avenue is "by presenting direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor . . . motivated the employer's adverse employment decision." *Diamond*, 416 F.3d at 318. When direct evidence of a discriminatory intent is lacking, a Plaintiff may also avoid summary judgment "through the burden-shifting framework set forth in *McDonnell Douglas* . . . to raise an inference of illegal conduct." *Constellium*, 2017 WL 1552325, at *5. Using this method, the Plaintiff must first present evidence establishing a prima facie case of discrimination. *Id.* "[T]he showing the plaintiff must make as to the elements of the *prima facie* case in order to defeat a motion for summary judgment is 'de minimis.'" *Nestor v. Bruce Hardwood Floors, L.P.*, 558 S.E.2d 691, 694 (W.Va. 2001) (quoting Syl. Pt. 4, in part, *Hanlon,* 464 S.E.2d at 741).

Once the employee has made a prima facie case, "[t]he employer must then articulate a legitimate, non-discriminatory reason for the adverse employment action." *Constellium*, 2017 WL 1552325, at *5. If the employer presents some evidence establishing a non-discriminatory reason for the adverse employment action, the burden then shifts back to the plaintiff to "demonstrate the employer's reasons are actually a pretext for discrimination." *Id.* (internal citations omitted). "Pretext as it relates to unlawful discriminatory employment practice 'means

an ostensible reason or motive assigned as a color or cover for the real reason or motive, or false appearance, or pretense.'" *Id.* (quoting *Mayflower Vehicle Systems, Inc. v. Cheeks*, 629 S.E.2d 762, 773 (W.Va.2006)). The plaintiff must prove by a preponderance of the evidence that the employer's offered reasons for the adverse employment action are pretextual. *See*, *Reese v. CAMC Memorial Hosp., Inc.*, 2010 WL 2901627 (S.D.W.Va.,2010) (Goodwin, J.) (internal citations omitted). However, a plaintiff need not show that the illegal motive was the sole motive behind the adverse decision. *Cheeks,* 629 S.E.2d at 773. Under a "mixed motive" analysis, a plaintiff may prove pretext by "showing that an illegal motive played a significant part in her employer's adverse decision." *Reese*, 2010 WL 2901627, at *4; s*ee Worden v. SunTrust Banks, Inc.,* 549 F.3d 334, 342 (4th Cir.2008). "The final pretext inquiry 'merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination,' which at all times remains with the plaintiff." *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 256 (1981)) (alterations in original).

With this framework in mind, the Court will consider the Defendant's motion for summary judgment regarding the Plaintiff's claims of age and disability discrimination under the WVHRA.

### *1. Age Discrimination*

"To establish a prima facie case of age discrimination under the WVHRA, [the] Plaintiff must show that (1) [s]he was over the age of forty; (2) [her] employer made an adverse employment decision affecting [her]; and (3) the adverse decision would not have been made but for [her] age." *Lindenmuth v. Lab. Corp. of Am.*, No. 2:15-CV-13368, 2016 WL 5109159, at *5 (S.D.W. Va. Sept. 19, 2016) (Johnston, J.) (citing *Miller v. Terramite Corp.*, 114 Fed.Appx. 536, 541 (4th Cir. 2004)).

Here, the Plaintiff and Defendant agree that Ms. Daniel has satisfied the first two elements—she was terminated from employment at the hospital at age 49. As to the third element, however, the Defendant argues that Ms. Daniel cannot establish that her age was the reason she was terminated because the replacement hired after her termination was older than her. Further, the Defendant argues that the Plaintiff has failed to establish that any younger employees received any preferential treatment in the applicable time span, and that Ms. Daniel testified during her deposition that she was not terminated because of her age only, but because she was willing to make complaints regarding violations of patient safety.

The Plaintiff counters that she has established she was discriminated against based on her age and her disability. She contends that the hospital "exhibited preference in terms of scheduling, hire, and other terms of employment, for younger nurses who were neither experienced nor educated enough to advocate for patients' rights." (Pl.'s Mem. in Opp., at 14.) She argues that, while the Defendant is correct in its statement that Ms. Daniel's replacement was older than Ms. Daniel, all the other nurses that were hired by the Defendant after her termination were younger. The Plaintiff further argues that, should the Court need to perform an analysis of whether the Defendant's reasons for termination are pretextual, the timing of her termination and the favoritism shown to younger employees establishes a discriminatory motivation on the Defendant's behalf. The Plaintiff further contends that the Defendant has been accused of WVHRA discrimination three times in the past five years, creating a "repeated pattern of discrimination . . . establish[ing] that the Defendant's asserted reasons are false." (*Id.* at 17.)

The Court finds that the Plaintiff has failed to establish a prima facie case of age discrimination under the WVHRA. The Plaintiff has presented no evidence to create a genuine

issue of material fact that she would not have been terminated but for her age. Ms. Daniel testified during her deposition that she felt her firing had to do not only with her age, but because she advocated for patient safety in a way other employees did not, and does not dispute that the nurse hired after her termination was actually older than her. Ms. Daniel relies almost completely on her testimony of younger nurses allegedly receiving more favorable work schedules in 2013 to support a causal connection between her age and her termination. This alleged adverse employment action would have occurred well before the applicable two-year statute of limitations period, however, and Ms. Daniel provides no other evidence of this preferential treatment to support her assertions.

Moreover, even assuming the Plaintiff has presented sufficient evidence to present a prima facie case of age discrimination, she has not satisfied her burden of proving the Defendant's legitimate reasons for her termination were pretextual. The Defendant has presented a record of disciplinary actions that spans from shortly after the Plaintiff was hired up to her termination in 2015. Every disciplinary action taken by the Defendant centered on the Plaintiff's unprofessional actions in dealing with patients or other hospital employees. The Defendant has evidenced several times when the Plaintiff was warned about her interactions with patients and staff and informed that she risked termination if she did not improve her customer service skills. While she asserts that the Defendant terminated her because it wanted younger workers, Ms. Daniel does not dispute that her replacement was older than her, nor does she dispute that disciplinary history.

Ms. Daniel relies on the timing of her termination and an alleged favoritism the hospital showed to younger employees to prove the Defendant's pretext. The only evidence presented by the Plaintiff that supports this favoritism, however, is her testimony that younger employees were

given preferential schedules.  Ms. Daniel's same testimony also states that she was terminated because she "was an educated nurse that knew how to stand up for . . . patient rights . . .and it was easier to get rid of me than to deal with all of the other, because without me there, there was nobody there protecting the patients."  (Daniel Depo., at 330:10-20.)  She specifically stated that while she felt age had something to do with termination, it was also because she "was a strong, educated patient advocate, and they could bully the younger generation who lack skills."  (*Id.* at 341:9-16.)  This testimony alone does not prove by a preponderance of the evidence that the Defendant's lengthy record of prior disciplinary actions that culminated in her termination are a pretext for age discrimination, and the Plaintiff has provided no other, specific evidence to bolster it.  Regarding the "wet-willy" incident alone, Ms. Daniel admits that such an action was her reaction regarding other employees who looked "grumpy" because she was a "fun nurse."  (Daniel Depo., at 150:22-151:1.)  Ms. Daniel's supervisor and friend, Tammy Spurgeon, testified that Ms. Daniel was a very skilled nurse, but had problems communicating and could "cause havoc" because of those problems.  (Spurgeon Depo. at 14:24, 33:16-24.)  There is no evidence that younger nurses engaged in similar behavior without repercussion, or that younger nurses with similar records were retained.  In sum, the Defendant has shown a legitimate, nondiscriminatory reason for terminating Ms. Daniel based on her continued disrespectful and argumentative manner in dealing with patients and staff.  Ms. Daniel has provided no evidence to meet her burden of showing the stated reason for her termination was mere pretext, and the Defendant's motion as to Count I should therefore be granted.

### 2. *Disability Discrimination*

"To establish a prima facie case of disability discrimination under the WVHRA, [the] Plaintiff must show that (1) [s]he meets the definition of disabled within the laws meaning; (2) [s]he is a qualified disabled person; and (3) [s]he was discharged from [her] job." *Lindenmuth*, 2016 WL 5109159, at *3. According to the WVHRA, disability is defined as "(1) [a] mental or physical impairment which substantially limits one or more of such person's major life activities . . .; (2) a record of such impairment; or (3) being regarded as having such an impairment." *See*, *Powers v. Covestro LLC*, No. 2:16-CV-05253, 2017 WL 1952230, at *3 (S.D.W. Va. May 10, 2017) (Goodwin, J.) (citing W.Va. Code § 5-11-3(m)).

The Defendant argues that the Plaintiff again has failed to establish a prima facie case for disability discrimination. The Defendant first argues that Ms. Daniel has failed to prove that she is disabled at all under the WVHRA definition. It argues that the Plaintiff contends her disability is stress, but that she has not shown that stress limited a major life activity, that there was a record of impairment due to stress, or that the hospital regarded her as disabled due to her stress. The Defendant further argues that, even if she does satisfy the definition of disability under the act, Ms. Daniel has failed to establish a causal connection between that disability and her eventual termination. It argues that the Plaintiff has presented no evidence to prove that her stress had anything to do with her termination, and in fact, testified that she felt she was terminated because she was a strong patient advocate who often challenged the hospital for its treatment of patients. Lastly, the Defendant argues that it has put forth a legitimate reason for her termination due to her history of disciplinary issues regarding her unprofessional conduct, and the Plaintiff has failed to prove by a preponderance of the evidence that these reasons are a pretext for discrimination.

The Plaintiff counters that her anxiety and hypertension do satisfy the WVHRA's definition of a disability. Ms. Daniel contends that her stress rendered her unable to perform certain essential functions of her job, and that her request for FMLA leave alone demonstrates that she was disabled, and that there was a sufficient nexus of time between her FMLA leave based on her stress and her termination such that she has carried her burden of establishing disability discrimination. The Plaintiff further asserts that this evidence is also sufficient to show that the Defendant's proffered legitimate reasons are a mere pretext such that summary judgment should be denied.

The Court finds that the Plaintiff has failed to establish a prima facie case of disability discrimination sufficient to withstand the Defendant's summary judgment motion. The Court has doubt as to whether Ms. Daniel's FMLA leave for stress and hypertension satisfies any of the three potential factors that form the definition of a disability under the WVHRA. The Court need not reach a conclusion on that issue, however, because even if Ms. Daniel satisfies the first two elements of a prima facie case, she has failed to establish a causal connection between her stated disability and the adverse employment action taken against her.

The Plaintiff relies almost entirely on the time between her FMLA leave and her termination to urge the Court to infer an improper motivation on the Defendant's behalf. This time period between her FMLA leave for anxiety and her termination is not sufficient to establish a causal connection, however. Ms. Daniel took FMLA leave from September to October of 2014, and returned to work for nearly ten months before being discharged in August of 2015. During that period of employment between October 2014 and August 2015, she received two more disciplinary infractions before she was eventually terminated, all related to her unprofessional

conduct around staff and patients.  According to the Fourth Circuit regarding the time between a protected activity and an adverse employment action, "a lapse of three to four months between the employer's knowledge of protected activity and the alleged retaliation is too long to establish a causal connection by temporal proximity alone."  *Pascual v. Lowe's Home Ctrs., Inc.*, 193 Fed.Appx. 229, 233-34 (4th Cir. 2006); *see also*, *Constellium*, 2017 WL 1552325, at *5 (citing *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)).  Even if Ms. Daniel's anxiety and hypertension that led to her FMLA leave are sufficient to constitute a disability, the time period between her leave and her termination is not sufficient to establish the causal connection necessary to present a prima facie case of discrimination.

Further, as with her age discrimination claim, even assuming Ms. Daniel has established a prima facie case, she has not presented sufficient evidence in the face of the Defendant's legitimate reasons for her termination that a juror could reasonably conclude an improper motive existed behind the Defendant's actions.  Ms. Daniel again relies on the timing of her termination in conjunction with her FMLA leave to prove that the Defendant's reasons for termination were pretextual.  As the Court previously explained, however, this nexus in time is not sufficient to prove by a preponderance of the evidence that the Plaintiff's long record of disciplinary infractions, the majority of which she does not dispute, is a pretext for discrimination.  Without further evidence, the Plaintiff has not met her burden under the *McDonnel* framework, and the Defendant's motion as to Count II should be granted.

### B.  WVPSA Retaliation

The Defendant next moves for summary judgment as to the Plaintiff's claim of retaliation in violation of the WVPSA for her reports to hospital staff regarding violations of conduct that

jeopardize patient safety. The Defendant argues that the Plaintiff has failed to establish any specific instance of a patient safety report by the Plaintiff that has a causal connection to her termination in August of 2015. The Defendant argues that, because her reports were made during her duties as a nurse, and fall within the regular scope of her employment, her patient safety reports do not constitute a protected activity. The Defendant further argues that the Plaintiff's only evidence regarding her alleged retaliation is her own opinion that she was terminated based on her regularly bringing patient safety concerns to hospital administration.

Ms. Daniel counters that the hospital was replete with a culture of a lack of care for patient safety. The Plaintiff claims that she has presented evidence of several good-faith reports on her behalf regarding this culture and the lack of patient safety she observed, and that other witnesses have testified to this culture. Based on this evidence, Ms. Daniel argues that she has sufficiently established a prima facie case of retaliation under the WVPSA that should survive the Defendant's motion for summary judgment.

The WVPSA states as follows

> No person may retaliate or discriminate in any manner against any health care worker because the worker . . .:
>
> (1) Makes a good faith report, or is about to report, verbally or in writing, to the health care entity or appropriate authority an instance of wrongdoing or waste.
>
> (2) Advocate on behalf of a patient or patients with respect to the care, services, or conditions of a health care entity;
>
> (3) Initiated, cooperated or otherwise participated in any investigation or proceeding of any governmental entity relating to the care, services or conditions of a health care entity.

W.Va. Code § 16-39-4(a). According to the West Virginia Supreme Court of Appeals, "[t]he legislative purpose of the [WVPSA] is to protect patients by providing protections for those health

care workers with whom the patient has the most direct contact." *Camden-Clark Mem'l Hosp. Corp. v. Tuan Nguyen*, 807 S.E.2d 747, 752 (W.Va. 2017) (internal citations omitted); *see also*, *McCauley v. Amedisys Holding, L.L.C.*, No. 1:13CV9, 2014 WL 838261, at *2 (N.D.W. Va. Mar. 4, 2014). The West Virginia Supreme Court has had very little opportunity to analyze the WVPSA, however, and provides little guidance on the elements of such a claim. As previously discussed, however, the West Virginia Supreme Court has held that discrimination claims under the WVHRA will "coincide with the prevailing federal application of Title VII unless there are variations in the statutory language that call for divergent applications or there are some other compelling reasons justifying a different result." *Hanlon*, 464 S.E.2d at 754. Thus, the WVSCA has adopted a method of analyzing claims of retaliation or discrimination under the *McDonnel Douglas* burden-shifting framework. *Conaway v. E. Associated Coal Corp.*, 358 S.E.2d 423, 429-30 (W.Va. 1986). This analytical framework is used in similar retaliation claims brought under the Family Medical Leave Act (FMLA), a federal statute providing employees the right to take leave from work for family or medical reasons. *See*, *Vannoy v. Fed. Reserve Bank of Richmond*, 827 F.3d 296, 304 (4th Cir. 2016) ("FMLA retaliation claims may rest on circumstantial evidence evaluated under the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)."). Given the West Virginia Supreme Court's adoption of the *McDonnell Douglas* framework regarding other discrimination and retaliation claims, its lack of guidance as to WVPSA claims, and the similarity of the claim to retaliation under the FMLA, this Court will analyze the motion for summary judgment as to Count III using the *McDonnell Douglas* burden-shifting framework as described in detail above.

To establish a prima facie case of retaliation under the WVPSA, the Plaintiff must show that she was a healthcare worker who was discriminated or retaliated against for making a good-faith report of wrongdoing or for advocating for patient safety. W.Va. Code § 16-39-4(a). If the Defendant presents some evidence establishing a non-discriminatory reason for the adverse employment action in response to the prima facie case, the burden then shifts back to the plaintiff to "demonstrate the employer's reasons are actually a pretext for discrimination." *Constellium*, 2017 WL 1552325, at *5 (internal citations omitted).

Here, the Plaintiff has provided sufficient evidence to establish a prima facie case of retaliation. It is undisputed that she was a healthcare worker who made good-faith reports regarding patient safety issues while under the Defendant's employ and was eventually terminated. However, for the same reasons outlined above, the Defendant has provided legitimate, non-retaliatory reasons for terminating the Plaintiff's employment, and Ms. Daniel has not supplied evidence of retaliatory animus beyond her own speculation. Ms. Daniel admitted that she engaged in acts that she was disciplined for, including putting her wet finger in the ear of another hospital employee while working. She was disciplined on several occasions because of her unprofessional actions with staff and patients, and co-workers who testified to being her "very good friend[]" also testified that she had communication issues and "could cause havoc." (Spurgeon Depo. at 14:24, 33:16-24.)

Moreover, Ms. Daniel specifically testified to making multiple reports regarding her patient safety concerns that she was not punished for. For example, Ms. Daniel testified to reporting the way pharmacy staff inappropriately mixed pediatric medication, and the way emergency room staff inserted intravenous needles, but was not disciplined after either of those reports. (*See*,

Daniel Depo., at 72:6-76:13.) Again, there is no comparator evidence suggesting that other employees who made complaints related to patient care were disciplined, or that employees with similar disciplinary issues who did not make complaints related to patient care were retained. Thus, the Court finds that Ms. Daniel has not supplied sufficient evidence to permit a jury to find that the hospital's proffered reason for her termination was pretextual. Accordingly, the Defendant's motion for summary judgment as to Count III should be granted.

### C.   Discharge in Contravention of Public Policy

The Defendant next moves for summary judgment as to Count IV of the Plaintiff's complaint, wherein Ms. Daniel alleges that she was discharged in contravention of West Virginia public policy. The Defendant argues that the Plaintiff's claim in Count IV is preempted by her claims for age and gender discrimination under the WVHRA and for retaliation under the WVPSA. The Defendant asserts that both statutes constitute a "significant public policy" such that the Plaintiff cannot assert claims under the statues and under the state's public policy generally. The Plaintiff counters that she may plead discharge in violation of West Virginia public policy in the alternative to her claims for discrimination and retaliation under various state statutes, and that her claims in Count IV should therefore survive summary judgment.

At the outset, the Court notes that the Plaintiff's complaint does not state that Count IV is plead in the alternative to her claims in Counts I-III. Further, regardless of whether the claim in Count IV was pled in the alternative, the Court finds that the Plaintiff's claim for wrongful discharge in contravention of West Virginia public policy is preempted by her claims for discrimination and retaliation under the WVHRA and WVPSA. Pursuant to West Virginia law,

> the rule giving the employer the absolute right to discharge an at will
> employee must be tempered by the further principle that where the

> employer's motivation for the discharge contravenes some
> substantial public policy principle, then the employer may be liable
> to the employee for damages occasioned by the discharge.

*Harless v. First Nat'l Bank in Fairmont*, 246 S.E.2d 270, 275 (W.Va. 1978). Accordingly, "a cause of action for wrongful discharge exists when an aggrieved employee can demonstrate that his/her employer acted contrary to substantial public policy in effectuating the termination." *Swears v. R.M. Roach & Sons, Inc.*, 696 S.E.2d 1, 6 (W.Va. 2010) (quoting *Feliciano v. 7-Eleven, Inc.*, 559 S.E.2d 713, 718 (W.Va. 2001)). This claim is commonly known as a *Harless* claim.

Just last year, this Court *twice* examined whether a plaintiff's claims of discrimination under the WVHRA supersedes a *Harless* claim "that emanates from the public policy announced in the WVHRA, when the same facts underlie both the WVHRA claim and the *Harless* claim." *Collins v. Lowe's Home Centers, LLC*, No. CV 3:17-1902, 2017 WL 6061980, at *3 (S.D.W. Va. Dec. 7, 2017) (Chambers, J.); *see also*, *Adkins v. Cellco P'ship, Inc.*, No. CV 3:17-2772, 2017 WL 2961377, at *3 (S.D.W. Va. July 11, 2017) (Chambers, J.) ("[C]ourts in this district and the Northern District of West Virginia have interpreted the law repeatedly as preventing a plaintiff from maintaining both a *Harless*-based common law action and a WVHRA claim based on the same conduct."). As this Court found, "[t]he purpose of the *Harless*-based claim was to prevent the termination of employees when such termination contravened public policy, *specifically when no other private cause of action could enforce the public policy at issue*." *Adkins*, 2017 WL 2961377, at *4 (emphasis added). The Court therefore ruled that a *Harless* claim is superseded by a discrimination or retaliation claim under the WVHRA when the conduct underlying both claims is the same. *Collins*, 2017 WL 6061980, at *4.

Here, the Plaintiff's complaint specifically pleads that her claim of wrongful discharge in violation of West Virginia public policy is based on the same conduct as her claims for

discrimination under the WVHRA and retaliation under the WVPSA. Specifically, the Plaintiff relies on her "good faith reporting of patient safety issues, plaintiff's age, and/or plaintiff's disability and/or perceived disability" to support her claims in Counts I, II, III, and IV. (Compl., at ¶ 33, 38-41, 44-48, 52.) Thus, "[the] Plaintiff cannot state a plausible claim for wrongful discharge in violation of public policy when the WVHRA [and WVPSA] applies to Defendant and covers the same factual conduct." *Adkins*, 2017 WL 2961377, at *4. The Defendant's motion for summary judgment as to Count IV should therefore be granted.

### D. Hostile Work Environment

Lastly, the Defendant moves for summary judgment on the Plaintiff's claim of a hostile work environment alleged in Count V. The Defendant argues that the Plaintiff's claim of a hostile work environment is time barred because she failed to allege any incidents that created a hostile work environment that occurred within two years of the filing of her complaint, rendering her entire claim time-barred. The Defendant further argues that, even if the Plaintiff's claim is not time-barred entirely, she has failed to allege conduct attributable to the alleged discrimination that was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment. Ms. Daniel counters that her claim is not time barred based on the Defendant's continued retaliatory actions against her, and that deposition testimony of the hospital's CEO provides sufficient evidence to create a genuine issue of material fact that the hospital created a hostile work environment based on the Plaintiff's age, disability, and continued advocacy for patient safety.

To the extent that the Plaintiff relies on alleged conduct that occurred more than two years before the filing of her complaint on August 14, 2017, her claim for hostile work environment is

time barred, as the Court previously discussed.   As to any conduct that the Plaintiff alleges created a hostile work environment within the two-year statute of limitations, the Court finds that she has not produced evidence creating a genuine issue of material fact as to whether the Defendant hospital created a hostile work environment.   As the Court has previously discussed in detail, the Defendant has presented evidence of a significant history of disciplinary actions taken against the Plaintiff, culminating in her termination, all centered on her unprofessional conduct with staff and patients.   Ms. Daniel testified to making many reports regarding patient safety, several of which she was not disciplined in any manner for making.   Thus, none of the evidence presented by the Plaintiff supports a hostile work environment on the Defendant's behalf.

Further, Ms. Daniel relies on testimony from the Defendant that 30 nurses quit during the tenure of one of Ms. Daniel's supervisors, Ellen King, and testimony from the hospital's CEO that Ms. King struggled with respecting other hospital staff.   (*See*, Stephanie Adkins Depo., at 89:23-90:6; *see also*, David Darden Depo., at 36:18-37:7).   Ms. Daniel cites this testimony in support of her assertion that the Defendant's actions against her were severe and pervasive.   Here, however, Ms. King's employment at the hospital ended in 2014, a year before Ms. Daniel was terminated and three years before she filed the instant complaint.   Thus, this evidence does not fall within the applicable statute of limitations.

In order to adequately show that a defendant's conduct was sufficiently severe and pervasive in a hostile work environment claim under the WVHRA, the plaintiff "must show that she did perceive, and a reasonable person would perceive, the environment to be abusive or hostile." *Biddle v. Fairmont Supply Co.*, No. CV 1:14CV122, 2015 WL 5634611, at *7 (N.D.W. Va. Sept. 24, 2015), *aff'd,* 648 F. App'x 382 (4th Cir. 2016) (quoting *E.E.O.C. v. Central*

*Wholesalers, Inc.*, 573 F.3d 167, 175 (4th Cir. 2009)).  In determining whether alleged harassing conduct was severe and pervasive, district courts are to look at "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Id.*  The Plaintiff has presented no evidence that falls within the two-year statute of limitations that creates a genuine issue of material fact regarding this standard. Ms. Daniel was disciplined on several occasions for poor customer service and the manner in which she dealt with other hospital staff members, as previously discussed in detail.  She has presented no evidence of discriminatory conduct, and certainly no conduct that was mentally or physically severe or threatening or that interfered with her work performance.   Therefore, for the reasons previously discussed in detail above, the Defendant's motion for summary judgment as to Count V should be granted.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the *Motion for Summary Judgment* (Document 43) be **GRANTED** and that any outstanding motions be **TERMINATED AS MOOT**.

The Court **DIRECTS** the Clerk to send a certified copy of this Order to counsel of record and to any unrepresented party.

ENTER:    August 1, 2018

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

24